UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LEIGH ANN DAYMON, | ) | Bankruptcy No. 12 B 21010 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CHICAGO PATROLMEN'S FEDERAL CREDIT UNION, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 12 A 01021 |
| | ) | |
| LEIGH ANN DAYMON, | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Debtor Leigh Ann Daymon ("Defendant") filed her petition for relief under chapter 7 of the Bankruptcy Code. Plaintiff Chicago Patrolmen's Federal Credit Union instituted the above-entitled Adversary Proceeding seeking determination of nondischargeability of debt against Defendant under 11 U.S.C. § 523(a)(8). This matter was tried on Plaintiff's Complaint (12 A 01021, Dkt. No. 1, hereinafter the "Complaint"). In addition to evidence previously admitted into the record,[1] the Court heard testimony from James Pigott, one of Plaintiff's witnesses, and from Defendant herself. Both sides rested after presentation of evidence and argument. Based thereon, the following Findings of Fact and Conclusions of Law are made and entered, pursuant to which judgment will be separately entered in favor of Plaintiff.

---

[1] Prior to trial, both parties had filed cross-motions for summary judgment (Dkt. Nos. 13, 16), which were both denied; however, pursuant to Local Rule 7056, the undisputed facts and exhibits presented in connection with the motions were ordered admitted for purposes of the trial.

## FINDINGS OF FACT

1. Plaintiff Chicago Patrolmen's Federal Credit Union (the "Credit Union") is a financial institution located in Chicago, Illinois.

2. Defendant Leigh Ann Daymon is an individual currently residing in Chicago, Illinois.

3. Defendant was employed by the Credit Union from about October 16, 2006, until December 21, 2009.

4. During Defendant's employment, the Credit Union sponsored a program that provided reimbursement of tuition expenses for eligible employees (the "Tuition Assistance Program").

5. To receive reimbursement under the Tuition Assistance Program, an eligible employee must go through two stages of approval: first, the employee must request pre-approval from his or her immediate manager and provide a written explanation of how a proposed class will enhance the employee's job performance. Second, within 45 days after completing such class, the employee must submit proof of grades and tuition cost to human resources for final approval.

6. One of the stated purposes of the Tuition Assistance Program is to support self development and educational efforts of the Credit Union's employees.

7. Participation in the Tuition Assistance Program is voluntary.

8. In January 2008, Defendant began taking classes at DeVry University Keller Graduate School of Management. She was ultimately awarded a Masters in Business Administration degree ("MBA") in 2009.

9. DeVry University is an independent institution and not affiliated with the Credit Union.

10. Shortly after enrolling at DeVry, Defendant was promoted to Assistant Manager in the Credit Union's Accounting and Finance Department.

11. From November 29, 2007, through May 18, 2009, Defendant submitted nine separate written requests for approval to participate in the Tuition Assistance Program in connection with her graduate business studies at DeVry (collectively, the "Approval Request Forms").

12. Eight of the Approval Request Forms were executed by Defendant on or before the date the coursework proposed in each form was to begin.

13. In each request for approval, Defendant agreed in writing that by participating in the Tuition Assistance Program she would be required to remain employed with the Credit Union for a certain minimum period of time (the "Mandatory Service Obligation") starting from the date of the final reimbursement payment under the program. Defendant further agreed that if she failed to uphold the Mandatory Service Obligation, she would repay all amounts she received under the Tuition Assistance Program (the "Tuition Repayment Obligation").

14. In connection with each Approval Request Form, the Credit Union reimbursed Defendant directly for tuition on nine separate occasions from March 19, 2008, to September 2, 2009. Reimbursement for each requested class was made within 72 days after each class's start date.

15. Based on Defendant's voluntary participation in the Tuition Assistance Program, the Credit Union paid Defendant a total of $33,037.87.

16. Defendant received her last payment under the Tuition Assistance Program on September 2, 2009.

17. Defendant voluntarily terminated her employment with the Credit Union on December 21, 2009, to accept new employment.

18. Defendant failed to meet the Mandatory Service Obligation required by her participation in the Tuition Assistance Program.

19. In February 2010, the Credit Union sued Defendant in the Circuit Court of Cook County, Illinois, to collect monies owed under the Tuition Repayment Obligation.

20. The state court entered judgment against Defendant on July 16, 2010, in the amount of $33,037.87, which represents the total amount reimbursed to Defendant under the Tuition Assistance Program.

21. Defendant voluntarily filed for relief under chapter 7 of the Bankruptcy Code on May 23, 2012.

22. As of the date of trial on the Adversary Complaint, Defendant has not repaid any amounts owed under the Tuition Repayment Obligation.

23. Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## JURISDICTION AND VENUE

Jurisdiction lies over this proceeding under 28 U.S.C. § 1334(b), and the proceeding has been referred here by Internal Operating Procedure 15(a) of the District Court. The Complaint seeks to determine dischargeability of debt and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is properly placed in this court under 28 U.S.C. § 1409(a).

## CONCLUSIONS OF LAW

### Standard of Review under Section 523(a)(8)

The Adversary Complaint seeks determination of nondischargeability of Defendant's Tuition Repayment Obligation under section 523(a)(8) of the Bankruptcy Code, which provides in part that a debtor shall not be discharged from a debt for "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii).[2] The party seeking to establish an exception to discharge of a debt bears the burden of proof. *In re Harsymiw*, 895 F.2d 1170, 1172 (7th Cir. 1990). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1992). To provide an "honest but unfortunate debtor" with a fresh start, courts will construe exceptions to discharge strictly against a creditor and liberally in favor of the debtor. *Id.* at 286–87. The Credit Union argues that the funds Defendant received from the Tuition Assistance Program were an educational benefit under section 523(a)(8)(A)(ii), which would make Defendant's obligation to repay those funds nondischargeable. (Pl.'s Prop. Findings of Fact & Concls. of Law 9.) To prevail on this theory, the Credit Union must show by preponderance of evidence that said funds constituted an educational benefit under the statute.

### The Tuition Assistance Program Provided an Educational Benefit to Defendant

The term "educational benefit" is not defined by the Code, and there is no controlling case law in this Circuit that addresses whether employer-sponsored tuition reimbursement is a

---

[2] Debts under § 523(a)(8) may only be discharged if excepting such debts from discharge would impose an undue hardship on the debtor and the debtor's dependants. 11 U.S.C. § 523(a)(8). Defendant does not assert that she would suffer an undue hardship if the Tuition Repayment Obligation is not discharged. (Mem. in Supp. of Def.'s Mot. for Summ. J. 8.)

nondischargeable educational benefit under § 523(a)(8)(A)(ii). Many opinions have held that when a student accepts funds intended as financial assistance for education in exchange for an agreement to perform a service, an obligation to repay those funds arising from the student's failure to perform is nondischargeable. *See, e.g., In re Burks*, 244 F.3d 1245, 1246 (11th Cir. 2001) (finding obligation to repay educational stipend nondischargeable due to debtor's failure to fulfill teaching obligation for three-year period after obtaining graduate degree).[3] However, reimbursement of tuition expenses already incurred for classes previously completed raises an issue as to whether such reimbursement is educational in nature. Compare *Resurrection Med. Ctr. v. Lakemaker (In re Lakemaker)*, 241 B.R. 577, 580 (Banrk. N.D. Ill. 1999) (holding that salary advanced to repay employee's tuition was merely an inducement to employment and did not avail employee of any educational opportunity or benefit) with *In re Busson-Sokolik*, 635 F.3d 261, 266–67 (7th Cir. 2011) (applying a "purpose driven test" to find that a loan was "educational" when it was part of a program specifically designed to provide financial support to students working to complete their education).

In interpreting provisions of the Bankruptcy Code, courts must "look to the provisions of the whole law, and to its object and policy." *Hiatt v. Ind. State Student Assistance Comm'n*, 36 F.3d 21, 23 (7th Cir. 1994) (quoting *Kelly v. Robinson*, 479 U.S. 36, 43 (1986)). Section 523(a)(8)

---

[3] The Eleventh Circuit opinion in *Burks* also cites various cases involving a physician's failure to repay funds received to finance medical training after breaching an agreement to practice medicine in areas designated to have a shortage of physicians. Those opinions found the repayment obligations nondischargeable. *See, e.g., U.S. Dept. of Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986); *In re Lipps*, 79 B.R 67 (Bankr. M.D. Fla. 1987); *U.S. Dept. of Health & Human Servs. v. Brown*, 59 B.R. 40 (Bankr. W.D. La. 1986); *U.S. Dept. of Health & Human Servs. v. Vretis*, 56 B.R. 156, 157 (Bankr. M.D. Fla. 1985); *U.S. Dept. of Health & Human Servs. v. Avila*, 59 B.R. 933, 937 (Bankr. W.D.N.Y. 1985).

was added to the Bankruptcy Code to address perceived abuses by student borrowers who sought to discharge their student loan debts by filing bankruptcy shortly after graduation, before making any significant attempts at repayment. *Id.* Congress believed that the solvency of government-backed student loan programs would be jeopardized unless such loans were made nondischargeable, and by protecting these loans from discharge, Congress intended to promote a policy of ensuring availability of educational financing for students. *See In re Chambers*, 348, F.3d 650, 653–54 (7th Cir. 2003).

Discharge exceptions under § 523(a)(8) have been expanded to cover other educational debts. *Id.* at 654. Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 523(a)(8) only applied to obligations for funds received from governmental or nonprofit institutions. *See Sensient Techs. Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008). By amending § 523(a)(8), Congress intended to broaden the scope of nondischargeable debts under that section to recognize an important role played by private institutions in providing educational funding for students. In addition to private scholarships and stipends, employer-sponsored tuition reimbursement programs, such as the Tuition Assistance Program in this case, provide an alternative to prospective students who may be unwilling or unable to finance their education out-of-pocket or with traditional student loan options. Moreover, the incentives to provide these programs would be radically altered if employees could renege on their contractual obligations and immediately discharge any resulting liability through bankruptcy. This loophole is characteristic of the same abuses that led Congress to enact § 523(a)(8) in the first place. These parallels provide support for finding an "educational benefit" in employer-sponsored tuition reimbursement. Furthermore, tuition reimbursement programs suffer the same

vulnerabilities as obligations to repay educational scholarships and stipends, which are expressly made nondischargeable by § 523(a)(8)(A)(ii). Reimbursed tuition is in every respect the same as a school scholarship except for when and from whom the funds are paid, and the obligation to repay it is treated the same under the statute.

In this case, the Credit Union's disbursements under the Tuition Assistance Program were an educational benefit to Defendant. Defendant voluntarily participated in the Credit Union's Tuition Assistance Program to finance her graduate education. Defendant was eligible to apply for a student loan from the Credit Union, but she did not apply. (Def.'s Prop. Findings of Fact & Concls. of Law ¶¶ 19–20.) Instead, by participating in the program, Defendant was able to pursue and obtain a graduate business degree without having to take out loans or spend her own money for tuition.

Defendant argues that her participation in the Tuition Assistance Program was all for the Credit Union's benefit and not her benefit because the Credit Union had planned to promote her to management. This argument is not persuasive. Defendant chose to enroll in the DeVry MBA program because she believed it would advance her career generally as well as with the Credit Union. She further chose to finance this decision through the Tuition Assistance Program instead of applying for loans, for which she admits she was eligible. Defendant knew the terms of the program and any limitations thereunder and accepted them. Defendant's allegation that she was hired on a "fast-track" to management does not make her decision any less voluntary; it simply provided her an incentive to seek a graduate education. Every dollar received by Defendant from the Tuition Assistance Program was specifically requested by her. She can hardly deny that she

benefitted by earning an MBA. Moreover, as discussed below, this was an "educational benefit" as contemplated by § 523(a)(8).

Defendant argues that she did not receive an educational benefit since reimbursement occurred only after she had already completed each class. This argument ignores the reality that the Credit Union's reimbursement obligations under the Tuition Assistance Program were set in motion every time Defendant submitted a written request for approval to participate in the program. Eight out of nine times, Defendant submitted such a request on or before the date her proposed classes were to begin. Provided that Defendant complied with various requirements of the program, she could expect to be reimbursed for her tuition expenses shortly after completing each class. Simply because she received the money after she completed a class does not invalidate the educational nature of the funds she received. *See Hiatt*, 36 F.3d at 23 (determining that consolidation loans made after a student completes her education are still "educational" in nature and nondischargeable under § 523(a)(8)).

This conclusion also comports with the Seventh Circuit's purpose driven test set forth in *Busson-Sokolik*. The purpose of the funds disbursed under the Credit Union's Tuition Assistance Program was to provide financial assistance to Defendant for her graduate studies at DeVry. The record shows that reimbursement under the program was limited to educational expenses. Furthermore, tuition was only reimbursed after Defendant successfully completed each course and submitted proof of grades to human resources. These limitations demonstrate the educational purpose of the Tuition Assistance Program. Nor does the fact that the Credit Union may also have benefitted from Defendant's participation in the program invalidate the educational nature of the benefit received by Defendant. Defendant offers no precedent or logic supporting her proposition

that a benefit ceases to be educational when there in a "significant nexus with employment." An MBA is a generally-applicable degree, and Defendant admitted at trial that she has found new employment and her MBA has made her more marketable as an employee.

Therefore, because the funds disbursed to Defendant under the Tuition Assistance Program were received as an educational benefit, Defendant's obligation to repay those funds to the Credit Union is nondischargeable under section 523(a)(8)(A)(ii).[4]

### The Rooker-Feldman Doctrine

Defendant's obligation to repay the funds she received from the Credit Union under the Tuition Assistance Program has already been established by a prior state court judgment. Defendant does not challenge the judgment or its amount. (Br. in Supp. of Def.'s Prop. Findings of Fact & Concls. of Law 2.) But Defendant argues that the Rooker-Feldman doctrine does not require this Court to treat the adjudicated debt as "all or nothing" when determining dischargeability. *Id.*

The Rooker-Feldman Doctrine instructs that "lower federal courts lack subject matter jurisdiction over claims that seek to review or modify a state court judgment." *See Bozich v. Mattschull (In re Chinin USA, Inc.)*, 327 B.R. 325, 333 (Bankr. N.D. Ill. 2005). The applicability of the doctrine depends on whether a federal litigant seeks to set aside a state court judgment. *Id.* at 335 (citing *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993)). Dischargeability of debt is a matter separate from the merits of the debt itself. *Id.*

---

[4] Because Defendant's debt is found to be nondischargeable under subsection (A)(ii) for the reasons stated herein, it is not necessary to address the Credit Union's alternative argument for nondischargeability and determine whether or not the tuition reimbursements received by Defendant from the Credit Union constituted an educational loan from a nonprofit institution under subsection (A)(i).

Defendant offers no factual or legal basis to parse or reduce the underlying judgment amount. The state court judgment of $33,037.87 in favor of the Credit Union redressed only the amounts reimbursed to Defendant under the Tuition Assistance Program. The conclusion here must be that the entire amount is nondischargeable under § 523(a)(8) so as not to disturb that prior judgment. The nature of the debt involved makes dischargeability in this case "all or nothing."

## CONCLUSION

Pursuant to the foregoing Findings of Fact and Conclusions of Law, judgment will be entered by separate order in favor of Plaintiff Chicago Patrolmen's Federal Credit Union against Defendant Leigh Ann Daymon on Plaintiff's Complaint. Defendant's repayment obligation to Plaintiff under the Tuition Assistance Program and state court judgment thereon in the amount of $33,037.87 will thereby be held nondischargeable.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 2nd day of April 2013.